**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DARREL J.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-CV-1262-SMY** |
| | ) | |
| **FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Darrel J. seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB on October 18, 2021, alleging a disability onset date of December 10, 2019 (Tr. 17).[2] The application was denied on December 7, 2022, and on reconsideration on October 1, 2023. *Id.* Following an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application on May 3, 2024 (Tr. 29). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.
[2] Plaintiff also filed for Supplemental Security Income ("SSI") on October 20, 2021 (Tr. 202).

**Issues Raised by Plaintiff**

Plaintiff raises the following issue for judicial review: Whether the ALJ failed to satisfy his burden of proof at Step Five by basing that finding on unreliable vocational testimony containing unresolved conflicts with the DOT.

**Legal Standard**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either Step Three or Step Five leads to a finding that the claimant is disabled. A negative answer at any step, other than at Step Three, precludes a finding of disability. The claimant bears the burden of proof from Step One through Step Four. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked

with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**Decision of the ALJ**

As a threshold matter, the ALJ determined that Plaintiff was insured for DIB through December 31, 2025 (Tr. 17, 19). The ALJ then followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 10, 2019, and that he suffered from the following impairments: degenerative joint disease of the shoulder, ankle, hips and knees, degenerative disc disease of the cervical spine with herniation, tinnitus and migraines, hernia, and post-traumatic stress disorder ("PTSD") (Tr. 19). The ALJ concluded that, although significantly limited in his ability to perform basic work activities, Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of the impairments listed in the regulations because he showed no documented medical need for an assistive device, no marked limitation in his physical functioning, and his mental impairments caused only mild or moderate limitations (Tr. 20-22).

The ALJ determined Plaintiff had the following Residual Functional Capacity ("RFC"):

> [L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift or carry 20 pounds frequently and 10 pounds occasionally, and he can sit, stand, and walk for 6 hours in an 8-hour workday. He can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He must avoid walking or standing on uneven terrain, climbing ladders, ropes and scaffolds, and hazards such as unprotected heights and dangerous moving machinery. He must avoid concentrated vibrations and more than moderate level of noise. He can understand, remember and carry out simple job tasks but must avoid the general public.

(Tr. 22-23)

The ALJ then concluded, based vocational expert ("VE") testimony, that Plaintiff was not disabled because he was able to perform other jobs that exist in significant numbers in the national economy: price marker (DOT #209.587-034), production assembler (DOT #706.687-010), and motel cleaner (DOT #323.687-014) (Tr. 29).

**The Evidentiary Record**

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**Agency Forms**

Plaintiff was born in 1971 and was 48 years old on the alleged onset date of December 10, 2019 (Tr. 60). In his application for disability benefits, Plaintiff listed the following conditions as limiting his ability to work: pituitary gland tumor, ankle fusion, knee surgery, bilateral shoulder surgery, and tinnitus (Tr. 245).

**Evidentiary Hearings**

Plaintiff was represented by counsel at his hearing on April 11, 2024 (Tr. 35) and testified to the following: He was last employed as a welder in December 2019 (Tr. 45). In 2017, he underwent surgery to remove a pituitary gland tumor (Tr. 39). His condition requires periodic testing and causes him migraines. *Id.* Since his surgery, he has endured constant ringing in his

head, dizziness, trouble sleeping, and worsening vision (Tr. 40). Despite struggling with dizziness, he continued working as a welder until his condition led him to be placed on restrictive duty (Tr. 41-42). While on restrictive duty, he completed minor welding tasks which largely involved helping carry equipment (Tr. 42). He then injured his knee and subsequently resigned after he never got released for active duty. *Id.* He has been out of work since he left his position as a welder in 2019 (Tr. 44-45). He sometimes wears a knee brace and uses a cane (Tr. 43-44). After suffering two motorcycle accidents, he no longer rides his motorcycle or drives (Tr. 45). He has a herniated disc in his neck and lower back and is prone to falling when completing household chores and taking a shower (Tr. 46-47). He lives alone, but his sister assists him with chores and getting groceries (Tr. 47-48). In May 2022, he suffered a back injury (Tr. 48). He underwent surgery in both shoulders but experiences more limitation in his left shoulder (Tr. 48-49). He is only able to walk half a block at a time, and sitting down also causes him a lot of pain (Tr. 50).

A vocational expert testified during the hearing that several jobs existed in the national economy for an individual with Plaintiff's age, education, work history, and conditions (Tr. 53). This work was categorized as light and unskilled (SVP 2). *Id.* When asked if his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), the VE stated that he also relied on his experience in testifying because the DOT did not address some of Plaintiff's limitations. *Id.* The VE also testified that the jobs he referenced could not be performed by an individual limited in reaching overhead or in standing or walking for more than half the day (Tr. 53-54).

The ALJ then inquired about sedentary positions that would account for the overhead reaching, sitting, and standing limitations. *Id.* The VE testified that, with those restrictions, the only suitable job was a parimutuel ticket taker (DOT #219.587-010), an unskilled, sedentary role with 7,100 jobs in the national economy (Tr. 55). Plaintiff's counsel asked the VE whether the

use of an assistive device in the workplace, such as a cane, would impact whether the hypothetical individual could perform the jobs identified. *Id.* The VE responded that the use of a cane would eliminate all light work, leaving only sedentary jobs suitable for the individual (Tr. 56).

**Relevant Medical Records**

Plaintiff has a history of degenerative joint disease of the shoulder, ankle, hips, and knees, as well as degenerative disc disease of the cervical spine, tinnitus, migraines, hernias, and PTSD (Tr. 19). He has a body mass index ("BMI") exceeding 30, which denotes a status of obesity (Tr. 407, 430, 1778). He has had fusion surgery on his left ankle (Tr. 405). After being diagnosed with hypopituitarism in 2017, he underwent surgery to remove a pituitary gland tumor (Tr. 981). In May 2019, he underwent reconstructive surgery on his left shoulder (Tr. 327). He also underwent knee surgery in January 2020 after tearing his anterior cruciate ligament ("ACL") and meniscus (Tr. 407-408). He had a motorcycle accident in July 2020 and sustained skin abrasions but no traumatic injuries (Tr. 458, 472).

In 2022, Plaintiff's medical examinations revealed tenderness and limited range of lateral movement in his neck (Tr. 1061), severe foraminal stenosis in his cervical spine (Tr. 1081), advanced degenerative disc disease and arthritis of the spine (Tr. 1084), and a retear of his ACL graft alongside a radial tear of the meniscus in his right knee (Tr. 1416-17). During his examinations from February to May 2022, Plaintiff was ambulating normally (Tr. 1055, 1060, 1065, 1071). Plaintiff has been seen for migraines and depression (Tr. 1507). Plaintiff was prescribed duloxetine for mixed anxiety and depressive disorder but stopped his medication in July 2022 and refused further psychiatric referrals (Tr. 1072, 1050). He also reported unwillingness to visit a neurosurgeon and undergo further surgeries (Tr. 1055).

In October 2022, Plaintiff sustained a nasal fracture from another motorcycle crash (Tr. 1540). A December 2022 examination showed a small to moderate sized hernia in his abdomen and a moderate sized hernia in his groin (Tr. 1411). By March 2023, Plaintiff had developed mild right hip osteoarthritis in his pelvis, and the groin hernia was still present (Tr. 1195). As of Plaintiff's July 2023 examination, he did not use a cane or walker although he had signs of decreased balance and walked with a limp (Tr. 1482-84). The physician concluded from the examination that his mental status indicators were normal. *Id.* Plaintiff once again began taking duloxetine in April 2023 (Tr. 1777). In April 2024, an MRI of the pituitary mass revealed some abnormalities in the pituitary gland while the hypothalamus, optic chiasm, suprasellar cistern, and sinuses appeared normal (Tr. 1780). These findings were deemed nonspecific, and the treating physician recommended continued attention. *Id.*

**State Agency Consultants' Opinions**

At the initial determination level, Richard Bilinsky, M.D., opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations, finding that he was not limited to performing unskilled work and could perform medium work (Tr. 65-66).

At the reconsideration level, Frank Mikell, M.D., affirmed the unfavorable disability determination, although he noted Plaintiff had postural, manipulative, and environmental limitations which restricted him to performing light and unskilled work (Tr. 86, 91). Dr. Mikell found that Plaintiff was limited in reaching overhead on his left side and should avoid noise, vibration, and hazards such as machinery and heights, but concluded that Plaintiff's descriptions of his limitations exceeded what was supported by the evidence (Tr. 84, 86).

Howard Tin, Psy.D., reviewed Plaintiff's file and concluded that Plaintiff experienced moderate mental limitations in interacting with others and concentrating, and mild limitations in understanding, remembering, or applying information (Tr. 82-83).

**Discussion**

Plaintiff argues the ALJ did not resolve conflicts in the vocational expert ("VE") testimony, based his findings on unreliable testimony, and thus failed to satisfy his burden of proof at Step Five of the sequential evaluation (Doc. 14, p. 4). At Step Five, the Commissioner bears the burden of proof to provide evidence demonstrating a claimant can perform other work that "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008). Testimony from a VE can be used to satisfy the ALJ's burden only if that testimony is reliable. *See Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008).

Social Security Ruling ("SSR") 00–4p,[3] imposes a two-fold responsibility on an ALJ before relying on testimony from a VE about the requirements of a particular job. SSR 00–4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). First, the ALJ must specifically ask about any possible conflicts between the VE's testimony and the DOT. Second, notwithstanding the VE's response, if there is an apparent conflict, the ALJ must elicit reasonable explanation from the VE for that conflict. SSR 00-4p; *see Overman*, 546 F.3d at 464. For a conflict to be "apparent" it must be so obvious that the ALJ should have recognized it without any assistance. *Sawyer v. Colvin*, 512 F. App'x 603, 610 (7th Cir. 2013). When a conflict is not apparent, the Plaintiff bears the burden of challenging the VE's testimony during the hearing. *See Overman*, 546 F.3d at 463. Otherwise,

[3] SSR 00-4p was in effect at the time of the ALJ's decision but was rescinded and replaced by SSR 24-3p effective January 6, 2025. *See* SSR 24-3p, 2024 WL 5256890, at *1 (Dec. 6, 2024).

the ALJ may rely on imperfect VE testimony if a claimant does not question the basis for the testimony at the time of the hearing. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).

Here, the ALJ's RFC assessment limited Plaintiff to performing light work with limitations including avoiding unprotected heights and dangerous moving machinery, avoiding concentrated vibrations and more than moderate levels of noise, and avoiding the general public (Tr. 22-23). At the hearing, the VE concluded that a hypothetical individual with Plaintiff's conditions and limitations could perform the duties of a price marker, production assembler, and motel cleaner (Tr. 53). The ALJ found the vocational expert's testimony to be consistent with the DOT (Tr. 29). Plaintiff argues that a conflict exists because the production assembler job would expose him to loud noise while the motel cleaner job would require him to interact with the public. These inconsistencies, he claims, "run afoul of SSR 00-4p," and, as such, the ALJ's decision should be vacated for being unsupported by substantial evidence (Doc. 14, p. 7).

The ALJ satisfied the first step of SSR 00-4p by asking the VE if his testimony was consistent with the DOT, and neither the VE nor Plaintiff's counsel identified a conflict (Tr. 53). However, at the second step, the ALJ failed to recognize apparent conflicts between Plaintiff's RFC and the motel cleaner and production assembly jobs. According to the DOT, a motel cleaner "renders assistance to patrons" of the establishment. U.S. Dep't of Labor, Dictionary of Occupational Titles, 323.687-014, 1991 WL 672783. This creates a conflict given that Plaintiff's RFC states he must avoid the general public. Additionally, the DOT describes the noise level for a production assembler as "Level 4 – Loud." U.S. Dep't of Labor, Dictionary of Occupational Titles, 706.687-010, 1991 WL 679074. Plaintiff correctly notes that role is unsuitable because his RFC prohibits him from exposure to noise above a moderate level.

Plaintiff's counsel did not raise these conflicts at the hearing. However, he was not required to do so because they were obvious. *See Overman*, 546 F.3d at 464; *see also Sawyer*, 512 F. App'x at 610. The ALJ failed to resolve these conflicts and therefore, erred in accepting the VE's testimony that Plaintiff could perform the duties of a motel cleaner and production assembler.

Defendant argues that any error by the ALJ is harmless because the exclusion of the motel cleaner and production assembler jobs leaves the job of price marker which exists in significant numbers in the national economy. In other words, that remand is not necessary when the ALJ would reach the same conclusion. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)

The Seventh Circuit has repeatedly found that there is no reversible error when, excluding the jobs that conflict with a claimant's RFC, a significant number of other jobs remain. For example, in *Nicholson v. Astrue*, the Seventh Circuit concluded that an ALJ's failure to obtain an explanation from the VE about a conflict between Plaintiff's RFC and the jobs of janitor and cafeteria worker was harmless error because Plaintiff did not dispute that 14,500 fast food jobs remained available and fit his RFC. 341 F. App'x 248, 254 (7th Cir. 2009).

Here, Plaintiff has not proven reversible error. Plaintiff's counsel did not challenge the VE's qualifications, methodology, or conclusions during the hearing (Tr. 55-56). Cross examination of the VE was limited to asking the expert if the use of a cane would limit an individual to sedentary work. *Id.* As such, despite any conflicts with two jobs the VE identified, the ALJ was entitled to rely on unchallenged VE testimony about the third. *See Barrett*, 355 F.3d at 1067. The price marker job permissibly stands alone and undisputedly available to Plaintiff with 131,000 jobs in the national economy. *See Nicholson*, 341 F. App'x. at 254.

**Conclusion**

After careful review of the record, the Court finds that the ALJ's error was harmless. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED.** The Clerk of Court shall enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: September 29, 2026**

**STACI M. YANDLE**
**Chief United States District Judge**